UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA**

v.                                                        Criminal No. 2:05cr134

**RICARDO BORNALES, III,**

      **Defendant.**

## MEMORANDUM ORDER

This matter is before the Court on Defendant Ricardo Bornales, III, ("Defendant") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, filed with the assistance of counsel. ECF No. 343. The Government has filed a brief in response indicating that it does not oppose Defendant's request for compassionate release, but noting that an immigration detainer precludes Defendant from being released to his family. ECF No. 351. Defendant filed a reply brief further arguing in support of release notwithstanding the detainer. ECF No. 352. For the reasons set forth below, Defendant's motion is **GRANTED**.

### A. Administrative Remedies

Pursuant to 18 U.S.C. § 3582, this Court "may not modify a term of imprisonment once it has been imposed," except in very narrow circumstances. 18 U.S.C. § 3582(c). One such circumstance is when a federal inmate files a motion seeking "compassionate

release" after pursuing administrative remedies through the United States Bureau of Prisons ("BOP"). Here, Defendant has submitted evidence indicating that he filed an administrative request for compassionate release on June 15, 2020. ECF No. 343-1. The Government does not challenge the sufficiency of Defendant's efforts to exhaust his administrative remedies, and the Court agrees with the parties that Defendant's motion is properly before this Court.

### B. Merits

Defendant, who at the time had no criminal record other than a prior DWI conviction, pled guilty in January 2006 to a methamphetamine trafficking conspiracy and money laundering conspiracy, and he was subsequently sentenced to 262 months imprisonment. See ECF Nos. 125, 162, 289. Defendant has been incarcerated since October of 2005, and is currently being held at Reeves III Correctional Institution, a private prison that contracts with the BOP.

For the reasons set forth in greater detail in Defendant's compassionate release motion, reply brief, and supporting exhibits, ECF Nos. 343, 346, 352, the Court finds that Defendant has demonstrated "extraordinary and compelling reasons" justifying compassionate release. First, considering Defendant's susceptibility to severe illness from COVID-19, it is undisputed

that Defendant has numerous long-term chronic health issues, including type II diabetes and hypertension. See ECF No. 346, at 2; ECF No. 289 ¶ 78. Additionally, supplemental medical information recently submitted by Defendant indicates that he also suffers from "Chronic kidney disease, stage 2." ECF No. 352-1. The CDC has found that both "type 2 diabetes" and "chronic kidney disease of any stage," place people "at increased risk for severe illness" from COVID-19, with the CDC further concluding that hypertension "might" increase the risk for severe illness. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 5, 2020). Defendant's medical records further reveal multiple additional conditions that raise further concerns regarding Defendant's overall health. Additionally, Defendant is fifty years old, and while his age presents a somewhat limited risk factor when considered alone, his age is notable when coupled with his multiple health conditions, as the CDC has concluded that "people in their 50s are at higher risk for severe illness [from COVID-19] than people in their 40s." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Nov. 5, 2020).

Considering Defendant's risk of contracting COVID-19 while incarcerated, Defendant is currently held at a "privately-managed

prison" under contract and oversight of the BOP, and the BOP provides less public information regarding such facilities as compared to BOP run facilities, most notably, the BOP does not provide information regarding the extent of COVID-19 testing at privately managed facilities. However, the BOP does report the total number of inmates with a positive COVID-19 test at privately managed facilities, and consistent with Defendant's arguments in his reply brief, the Reeves III facility where Defendant is housed is currently reporting 22 inmates with positive COVID-19 tests, the highest number of active cases among privately managed facilities. https://www.bop.gov/coronavirus/ (last visited Nov. 5, 2020). While 22 active cases represent a relatively small number when compared to outbreaks at certain facilities run by the BOP, defense counsel reports that Reeves III had only one positive case four weeks ago when Defendant's motion was filed, indicating that COVID-19 is actively spreading at Reeves III.[1]

As argued by Defendant, and appropriately acknowledged by the Government given the facts of this case, Defendant has demonstrated an "extraordinary and compelling" reason justifying compassionate release given his numerous documented long-term medical conditions

---

[1] Defense counsel also argues, with citation to publicly available COVID-19 resources, that the incidence of COVID-19 cases in the Texas county where Defendant's prison is located is currently rising, and that Texas recently reported more new COVID-19 cases than any other state in the country (thereby increasing the risk that prison staff could bring COVID-19 into the Reeves III facility).

4

and his current conditions of confinement. See United States v. White, -- F. Supp. 3d --, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (noting that "in the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility" (quoting United States v. Feiling, No. 3:19cr112, 2020 WL 1821457 at *7 (E.D. Va. Apr. 10, 2020))). Moreover, as argued in greater detail in Defendant's motion, ECF No. 343, at 20-24, and as further supported by the letters submitted by Defendant in support of compassionate release, the § 3553(a) statutory sentencing factors favor the Court exercising its discretion to grant compassionate release. See United States v. Webster, -- F. Supp. 3d. --, No. 3:91cr138, 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020) (outlining the contours of the Court's discretion and the relevant § 3553(a) and public safety considerations). Among the most notable considerations are Defendant's lack of a prior criminal history, lack of a history of violence, the fact that he has served fifteen years in prison for non-violent drug/money laundering offenses that did not involve a firearm, the fact that Defendant has served 80% of his sentence after consideration of good time credits, and the

absence of any suggestion by the Government that Defendant has not been a model inmate, as he reports.

Although Defendant does have an immigration detainer: (1) Defendant represents that he has lived in this country since he was 13 years old; (2) Defendant acknowledges his need to address the detainer but still seeks release at this time; and (3) the Government does not argue that the detainer should preclude the Court from granting compassionate release, although such detainer obviously impacts Defendant's "release plan."[2] After consideration of all the relevant facts, the § 3553(a) factors, and the applicable policy statements issued by the Sentencing Commission, the Court finds that the § 3553(a) factors weigh in favor of compassionate release, further finding that Defendant will not pose a danger to

---

[2] The Court carefully considered the impact of the detainer on the compassionate release calculus, having some initial concerns that Defendant could find himself detained in his immigration matter in conditions creating the same, or even a greater, risk of COVID-19 exposure than he currently faces (thus undercutting the argument that Defendant has demonstrated a "compelling" reason for release from BOP custody). However, the Court's initial hesitation was grounded in multiple unknowns, to include whether Defendant will be held in ICE custody beyond the initial 14-day ICE quarantine period (or an alternative 90-day period) referenced in the Government's brief. Consistent with Defendant's argument in his reply brief, it is the Court's understanding that ICE evaluates new detainees based on the CDC's COVID-19 guidance, and people like Defendant, who are plainly at high risk for severe illness from COVID-19, may be released after a review that considers, among other things, immigration history, criminal record, threat to the public or national security, flight risk, etc. Because so many of these factors appear favorable to Defendant, and in the absence of any objection from the Government, the Court concluded that compassionate release remained appropriate notwithstanding the immigration detainer.

the safety of any other person or to the community.  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.[3]

Accordingly, based on the above, and in the absence of any opposition by the Government, the Court **GRANTS** Defendant's motion and reduces his sentence in this case to a term of "**TIME SERVED**."[4] In all other respects, the judgment entered in this case, including the five-year supervised release term, and all conditions imposed therein shall remain in effect.  Additionally, as a special condition of his supervised release, Defendant is hereby **ORDERED** to be surrendered to a duly-authorized official of the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), upon his release from incarceration.

---

[3] The text of U.S.S.G. § 1B1.13 and the Guideline application note defining the phrase "extraordinary and compelling" have not been updated since the passage of the First Step Act to reflect an inmate's ability to directly petition the Court for compassionate release.  The Court finds that § 1B1.13 and its application notes in their current form remain instructive and do not prohibit this Court from granting compassionate release, in the appropriate case, due to the risk created by the COVID-19 pandemic.  See United States v. Rodriguez, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020).

[4] The Court elected not to impose a term of home confinement as an additional term of supervised release in light of: (1) the likelihood that Defendant will serve additional time in ICE custody; (2) the fact that Defendant's movements will presumably be closely monitored by ICE officials if he is released; (3) Defendant's lack of a prior criminal record and apparent low risk of recidivism; and (4) the absence of any request from the Government for an additional term of home confinement.  Mr. Bornales, however, is expressly **ADVISED** of the need to strictly comply with all conditions of supervised release should he be released from the custody of immigration officials, and any violation of such conditions following the instant sentence reduction will not be taken lightly by the Court.

The BOP shall have **fourteen (14) days** from the date of this Order to process Defendant's release/transfer and to administer a quarantine period prior to Defendant's transfer to ICE custody. If a quarantine period of fourteen days is required by the BOP, such period should begin immediately.

The Clerk is **REQUESTED** to forward a copy of this Order to all counsel of record, the Federal Bureau of Prisons, the United States Marshal's Office, and the Probation Office of this Court.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November __6__, 2020